[No. G036876. Fourth Dist., Div. Three. Mar. 9, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
NORMA FLORENTINO CATLEY, Defendant and Appellant.

COUNSEL

Terrence Verson Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**FYBEL, J.—**

### INTRODUCTION

Defendant Norma Florentino Catley appeals from her conviction for theft by a caretaker from an elder. (Pen. Code, § 368, subd. (e).) (All further statutory references are to the Penal Code, unless otherwise noted.) We affirm.

Defendant first contends there was insufficient evidence to support her conviction for theft based on a theory of larceny, because the victim, a 68-year-old man suffering from cognitive impairment due to Parkinson's disease and the medication taken to treat the disease, consented to her taking more than $17,000 of his money to buy herself a new sport utility vehicle (SUV). We disagree because substantial evidence showed the victim was not capable of consenting to the transfer of money.

Next, defendant argues the trial court erred by instructing the jury in accordance with section 1127g, enacted in 2004, that a witness with a cognitive impairment is not any more or less credible than any other witness. Defendant contends the instruction lowered the prosecution's burden of proof and thereby denied her federal constitutional due process. No published case has addressed whether an instruction tracking the language of section 1127g violates a defendant's due process rights by lowering the prosecution's

burden of proof. However, many cases considering the same instructional language applied to children as witnesses have determined the instruction does not lessen the prosecution's burden of proof and does not deny a defendant those rights. We publish this opinion because this reasoning also applies to the evaluation of the testimony of witnesses with developmental disabilities or cognitive impairments, and hold that an instruction based on section 1127g does not violate federal constitutional due process rights.

### STATEMENT OF FACTS

In April 2004, Edward Walsh was 68 years old. He suffered from Parkinson's disease and heart disease.

Defendant was hired to serve as Walsh's caretaker in April 2004. Her duties included driving Walsh to medical appointments; she was to use Walsh's car to do so. At some point after defendant was hired, Walsh's car was damaged in an accident. Walsh testified he became aware defendant was driving a new SUV sometime after the accident. Walsh asked defendant where she got the SUV; she showed Walsh a check he signed, and claimed the vehicle was a gift from him.

Walsh denied he knowingly signed a check to enable defendant to purchase the SUV. Walsh admitted his signature was on the check, but did not recall signing it. He also could not recall transferring money from his savings account to his checking account to fund the check.

On April 7, 2004, Walsh had given his daughter, Stephanie Hill-Aikins, a power of attorney. Hill-Aikins's name was on Walsh's checking account. Hill-Aikins wrote checks on that account to pay Walsh's bills. Hill-Aikins denied authorizing the writing, issuance, or payment of the check to defendant.

Hill-Aikins fired defendant on June 30, 2004, and contacted the police on the same day. Deputy Sheriff Brian Hagerman interviewed defendant at Walsh's residence on July 1, 2004. She told Deputy Hagerman the SUV was a gift from Walsh to reward her for work exceeding her agreed-upon duties. Defendant also told Deputy Hagerman she had asked Hill-Aikins for a larger vehicle to transport Walsh, and Hill-Aikins had refused.

Defendant claimed Walsh later gave her permission to buy the vehicle. Defendant told Deputy Hagerman that Walsh accompanied her to Wells Fargo bank, where he transferred $20,000 from his savings account to his checking account. Defendant filled out a check dated June 3, 2004, in the amount of $17,365.61, made payable to Norma Catley, and Walsh signed it. Defendant

then obtained a cashier's check from a different bank made out to Paradise Automotive, which she used to purchase the SUV. Defendant claimed she registered the SUV in her name because Walsh did not have a driver's license.

In August 2004, Dr. Bryan Kemp met with Walsh, and determined Walsh had cognitive impairment, including problems with short-term memory and limited attention span, as a result of his Parkinson's disease, and the medication he took to treat and control the disease. Dr. Kemp testified at trial as an expert witness on financial abuse of the elderly. He characterized Walsh's Parkinson's disease as a disability that made him vulnerable to financial abuse. Dr. Kemp testified many elderly persons are reluctant to disclose financial abuse to their families, and, in this case, Walsh was upset with himself and was concerned about disclosing the situation to his family.

Defendant was charged with theft by a caretaker from an elder (§ 368, subd. (e)), and grand theft (§ 487). A jury found defendant guilty of caretaker theft, and not guilty of grand theft. Defendant was sentenced to three years' formal probation, including 180 days in jail. Defendant timely appealed.

Discussion

I.

The record contains substantial evidence supporting
defendant's conviction.

Defendant argues there was insufficient evidence to sustain her conviction under section 368, subdivision (e). "In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value— such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two

interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11 [82 Cal.Rptr.2d 413, 971 P.2d 618].)

Defendant contends there was not substantial evidence of theft by larceny because she obtained the money from Walsh in a consensual transfer. We disagree.

■ The elements of theft by larceny are: (1) the defendant took possession of personal property owned by someone else; (2) the defendant did so without the owner's consent; (3) when the defendant took the property, he or she intended to deprive the owner of it permanently; and (4) the defendant moved the property, even a small distance, and kept it for any period of time, however brief. (Judicial Council of Cal. Crim. Jury Instns. (2006–2007) CALCRIM No. 1800; see § 484.) *"The act of taking personal property from the possession of another is always a trespass unless the owner consents to the taking freely and unconditionally* or the taker has a legal right to take the property. [Citation.]" (*People v. Davis* (1998) 19 Cal.4th 301, 305 [79 Cal.Rptr.2d 295, 965 P.2d 1165], fns. omitted, italics added.)

Defendant argues she could not have committed theft by larceny because Walsh consented to her taking his money. But the jury was properly instructed on the issue of consent (CALJIC No. 1.23), and there was ample evidence Walsh was not capable of consenting to such a transaction. Dr. Kemp testified Walsh suffered from cognitive impairment and short-term memory loss due to his Parkinson's disease and the medication he took to control it. The medication also caused him to suffer depression and hallucinations. He had difficulty paying attention and was slow in his reasoning.

Walsh's own testimony at trial supports a finding he did not consent to transfer funds to defendant. Although the parties stipulated that Walsh's signature was on the check, Walsh testified he could not remember signing the check, or going to the bank to make the transfer of funds. At times during his testimony, Walsh could not recognize his own signature.

In sum, Walsh's own testimony, as well as the expert opinion of Dr. Kemp, showed Walsh's mental capacity was sufficiently diminished to have prevented him from consenting to give or transfer the money to defendant. There was substantial evidence to support defendant's conviction for theft by larceny committed by the caregiver of an elder.

Because we conclude there was substantial evidence supporting defendant's conviction based on a theory of theft by larceny, we need not address the parties' arguments regarding the trial court's failure to instruct the jury regarding theft by fraud or theft by trick and device. If a jury is instructed on two alternative theories of criminal liability, one of which is legally sufficient and one of which is not, we will affirm unless the record affirmatively demonstrates the jury relied on the unsupported ground. (*People v. Sanchez* (2001) 26 Cal.4th 834, 851 [111 Cal.Rptr.2d 129, 29 P.3d 209].) If the jury in this case was not instructed on other theories of criminal liability for theft, but the theory on which it was instructed is legally and factually supported, any error in failing to instruct the jury on other theories is harmless.

II.

THE TRIAL COURT DID NOT ERR BY INSTRUCTING THE JURY WITH
CALCRIM No. 331.

Defendant argues that by instructing the jury with CALCRIM No. 331, the trial court lessened the People's burden of proof in violation of defendant's federal constitutional right to due process. Defendant further argues the jury should have been instructed to view the testimony of Walsh—who was suffering from Parkinson's disease at the time the crimes took place—with caution.

The trial court instructed the jury as follows: "In evaluating the testimony of a person with a cognitive impairment, consider all of the factors surrounding that person's testimony, including his or her level of cognitive development. [¶] Even though a person with a cognitive, or mental impairment . . . may perform differently as a witness because of his or her level of cognitive development, that does not mean he or she is any more or less credible than another witness. [¶] You should not discount or distrust the testimony of a person with a cognitive . . . impairment solely because he or she has such a[n] impairment."

■ This instruction tracks the language of section 1127g, which requires the trial court to give such an instruction upon the request of a party. (In her opening appellate brief, defendant failed to address the mandatory language of section 1127g. Even after the Attorney General raised the issue in the respondent's brief, defendant did not discuss the statute in her reply brief.) We have found no cases addressing section 1127g or CALCRIM No. 331.

The language of section 1127g is almost identical to the language of section 1127f, which advises the jury, in an appropriate case, that the testimony of a child is no more or less credible than that of an adult, and that all factors surrounding the child's testimony, including his or her level of cognitive development, should be considered by the jury.[1] Section 1127f reflects "the modern view regarding the credibility of child witnesses," namely, "that a child's testimony cannot be deemed insubstantial merely because of his or her youth." (*People v. Jones* (1990) 51 Cal.3d 294, 315 [270 Cal.Rptr. 611, 792 P.2d 643].)

In *People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1393 [7 Cal.Rptr.2d 660], the defendant argued the trial court denied him due process by instructing the jury with CALJIC No. 2.20.1, which tracked the language of section 1127f, because "the instruction 'lessened the government's burden of proof' because it 'effectively instructs the jury to unduly inflate the testimony of a child witness.'" The appellate court squarely rejected this argument. "The instruction tells the jury not to make its credibility determinations solely on the basis of the child's 'age and level of cognitive development,' but at the same time invites the jury to take these and all other factors surrounding the child's testimony into account. The instruction provides sound and rational guidance to the jury in assessing the credibility of a class of witnesses as to whom ' "traditional assumptions" ' may previously have biased the factfinding process. Obviously a criminal defendant is entitled to fairness, but just as obviously he or she cannot complain of an instruction the necessary effect of which is to increase the likelihood of a fair result. There was no denial of due process." (*People v. Gilbert, supra*, at p. 1393; see also *People v. McCoy*

---

[1] "In any criminal trial or proceeding in which a child 10 years of age or younger testifies as a witness, upon the request of a party, the court shall instruct the jury, as follows: [¶] In evaluating the testimony of a child you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. Although, because of age and level of cognitive development, a child may perform differently as a witness from an adult, that does not mean that a child is any more or less credible a witness than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child." (§ 1127f.)

"In any criminal trial or proceeding in which a person with a developmental disability, or cognitive, mental, or communication impairment testifies as a witness, upon the request of a party, the court shall instruct the jury, as follows: [¶] In evaluating the testimony of a person with a developmental disability, or cognitive, mental, or communication impairment, you should consider all of the factors surrounding the person's testimony, including their level of cognitive development. Although, because of his or her level of cognitive development, a person with a developmental disability, or cognitive, mental, or communication impairment may perform differently as a witness, that does not mean that a person with a developmental disability, or cognitive, mental, or communication impairment is any more or less credible a witness than another witness. You should not discount or distrust the testimony of a person with a developmental disability, or cognitive, mental, or communication impairment solely because he or she is a person with a developmental disability, or cognitive, mental, or communication impairment." (§ 1127g.)

(2005) 133 Cal.App.4th 974, 978–980 [35 Cal.Rptr.3d 366] [CALJIC No. 2.20.1 does not violate a defendant's state or federal constitutional rights]; *People v. Jones* (1992) 10 Cal.App.4th 1566, 1572–1574 [14 Cal.Rptr.2d 9] [CALJIC No. 2.20.1 permits jury to independently consider child's credibility as witness]; *People v. Harlan* (1990) 222 Cal.App.3d 439, 455–456 [271 Cal.Rptr. 653] [CALJIC No. 2.20.1 does not usurp jury's role as arbiter of witness credibility or excessively inflate child's testimony].)

■ Section 1127g was added in 2004 by the Legislature, which articulated its purpose as follows: "It is the intent of the Legislature to enact legislation protecting the rights of developmentally disabled persons and other dependent persons who are witnesses in criminal cases and ensuring that they are given equal access to the criminal justice system." (Stats. 2004, ch. 823, § 1.) The Legislature defined a dependent person as "any person who has a physical or mental impairment that substantially restricts his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities or whose physical or mental abilities have significantly diminished because of age." (*Id.,* § 2; see Evid. Code, § 177.)

CALCRIM No. 331 tracks the language of section 1127g, and is consistent with section 1127f and the cases interpreting it. CALCRIM No. 331 informs the jury it should not decide whether an individual with a developmental disability or cognitive impairment is a credible witness based solely on the disability or impairment. Rather, the instruction advises the jury the level of the witness's developmental disability or cognitive impairment is one factor it must consider. Like CALJIC No. 2.20.1, CALCRIM No. 331 "provides sound and rational guidance to the jury in assessing the credibility of a class of witnesses as to whom ' "traditional assumptions" ' may previously have biased the factfinding process." (*People v. Gilbert, supra,* 5 Cal.App.4th at p. 1393.)

■ The due process analysis of the instruction required by section 1127f is equally applicable to the instruction required by section 1127g. The same rationale for upholding the use of a similar instruction regarding the testimony of children also applies to the testimony of witnesses with a developmental disability or cognitive impairment. We therefore reject defendant's claim of instructional error, and hold the use of CALCRIM No. 331 did not deny defendant her federal constitutional right to due process.

## DISPOSITION

The judgment is affirmed.

Sills, P. J., and Bedsworth, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 23, 2007, S151951.