Filed 11/13/13  P. v. Loftis CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID LOFTIS and RODNEL KEVIN BELL,<br><br>    Defendants and Appellants. | G047778<br><br>(Super. Ct. No. 11HF2791)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed.

Robert V. Vallandigham, Jr., under appointment by the Court of Appeal, for Defendant and Appellant David Loftis.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant Rodnel Kevin Bell.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and William M. Wood, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendants David Loftis and Rodnel Kevin Bell were convicted by a jury of conspiracy to commit residential burglary (Pen. Code, §§ 182, subd. (a)(1), 459, 460, subd. (a); count 1), two counts of residential first degree burglary (Pen. Code, §§ 459, 460, subd. (a); counts 2 & 3), and attempted residential first degree burglary (Pen. Code, §§ 664, 459, 460, subd. (a); count 4).  As to the burglary charged in count 3, the jury found a non-accomplice was present (Pen. Code, § 667.5, subd. (c)(21)).  Loftis was sentenced to state prison for four years on each of counts 1 through 3, and two years on count 4, with each sentence running concurrently, for a total of four years.  Bell was sentenced to four years in state prison on counts 1 and 2, running concurrently, 16 months on count 3, and eight months on count 4, with the latter two running consecutively, for a total of six years.

On appeal, both defendants claim the trial court prejudicially erred by permitting prosecution witnesses to opine that defendants were committing residential burglary.  Loftis also claims the court erred by failing sua sponte to instruct the jury on the elements of theft, which was the target crime for the burglary conviction.  We agree the court erred in both respects, but conclude the errors were harmless.  Accordingly, we affirm.

2

On the morning of November 11, 2011, members of the Los Angeles County Sheriff's Office were engaged in surveillance of a green Jaguar. Deputy Lonnie Deck, who was in a helicopter acting as the tactical flight deputy, first observed the vehicle in a residential area southwest of the intersection of Interstate 5 and Highway 74.

The vehicle travelled slowly up and down every residential street in the area, stopping at times and restarting, making U-turns, and traversing some streets several times. The unusual movements of the vehicle were consistent with Deputy Deck's prior experiences in monitoring vehicles involved in residential burglaries.

The vehicle stopped at the curb across the street from a residence on Via de Linda Street in San Juan Capistrano and stayed in that position for two to three minutes. At that point, the right front passenger, a male, wearing a black hooded sweatshirt got out, crossed the street toward the residence, walked up the driveway, then disappeared from Deputy Deck's view along the north side of the residence for about 30 to 45 seconds. When he was next seen by Deputy Deck, the male walked back to the Jaguar and got back in to the vehicle.

The vehicle sat for another four to five minutes and then the right front passenger and right rear passenger got out and went to the house, past the front door, and through a gate into the backyard where they disappeared from Deputy Deck's view along the back of the house. When the two passengers came back into Deck's view about a minute and a half later, they retraced their path back to the Jaguar, got in, and the vehicle drove away quickly. The Jaguar slowed and followed the earlier driving pattern as it traversed another residential area, then returned to the freeway and went northbound on Interstate 5.

After hearing Deputy Deck's description of the Jaguar's stop at the Via de Linda residence, Los Angeles Sheriff's Detective Roberto Reyes drove to the residence.

3

He found no one at home and the rear sliding glass door open. Inside the house, drawers and cabinet doors were standing open and appeared to have been gone through in a fashion consistent with a burglary.

Kenneth Whitmer and his wife lived at the Via de Linda residence. They had left their home by about 9:30 that morning. Mr. Whitmer returned that afternoon after receiving a call from law enforcement. Mr. Whitmer had closed the sliding glass door at the rear of the house but had not locked it when he left that morning. The drawers and cabinet doors had also been closed when he left the house. When they returned that afternoon, however, he found nothing was missing. The Whitmers had not given permission to the defendants to enter their home.

As Deputy Deck continued to watch the Jaguar travel northbound on Interstate 5, the vehicle exited the freeway and drove into another residential neighborhood. The vehicle travelled through the residential neighborhood in the same pattern it followed in the earlier neighborhood, moving slowly up and down the residential streets several times each.

The Jaguar stopped in front of a residence on Aphena Street. After two to four minutes, the right front and right rear passengers got out and walked to the house, crossed the lawn and disappeared from Deputy Deck's view under a tree for about two minutes. Deputy Deck then saw the pair on the south side of the house heading toward the rear, where they disappeared from his view again. When he next saw them, they were getting back into the Jaguar and the vehicle drove away.

Detective Reyes responded to the Aphena residence after hearing Deputy Deck's observations. He spoke to one of the occupants, Cecilia Buelo, who lived and worked at the residence as a caregiver to six residential patients. She had been asleep when Detective Reyes arrived, and had heard nothing prior to the deputy's arrival. Defendants did not have permission to enter the residence. Detective Reyes found no signs of forced entry to the residence.

After leaving the Aphena residence, the Jaguar entered another residential neighborhood, where Deputy Deck saw it again drive slowly up and down the residential streets, making stops and U-turns, and eventually coming to a stop in front of a residence on Presidio Drive. After three or four minutes, the driver approached the house, crossed the front lawn and disappeared from Deputy Deck's view under a tree. The driver returned to the Jaguar in about a minute and a half, and backed the vehicle down the street, the distance of one house where it stopped. The vehicle sat in that position for two to three minutes and then all three occupants got out and headed back to the first house, again disappearing from Deputy Deck's view under the tree. About three minutes after the three men disappeared from Deputy Deck's view, he saw them running from the residence back to the Jaguar.

Eugene Perrine lived at the Presidio Drive residence and was home that day. He heard his door bell ring, but ignored it as he was not expecting anyone. When the doorbell began ringing again, his dogs barked and Mr. Perrine yelled at them. He looked out his front window and saw three shadows he described as males that were heading toward the street.

Eydith Jones lived next door to Mr. Perrine. That morning, looking out her front door, she saw three black males jogging on the sidewalk in front of her house and away from the Perrine residence. She then heard a vehicle drive away at high speed.

When Detectives Reyes and Anthony Valenzuela responded to Mr. Perrine's residence, they found a front window open and the window screen in the bushes under the window. The screen had been on the window and the window had been only slightly open when Mr. Perrine saw it earlier that morning.

After departing the Presidio residence, the Jaguar drove quickly back to Alicia Parkway and got onto Interstate 5 going northbound. The Jaguar sped up the freeway at 85 to 90 miles per hour, weaving in and out of traffic in all four lanes. Police stopped the vehicle on Interstate 5 and the three occupants were removed. Bell was the

5

right rear passenger, Loftis was the right front passenger, and Chad Richardson (not a party to this appeal) was the driver. Located inside the Jaguar were one pair of blue latex gloves, one pair of white gloves, and three cell phones. Officers also found the hooded sweatshirt, described by Deputy Deck as being worn by the right front passenger.

## DISCUSSION

*Officer Opinions that Defendants Were Committing Residential Burglary Were Inadmissible, but the Error Was Harmless*

Defendants first contend the court erred by permitting Deputy Deck and Detective Reyes to opine that defendants were committing residential burglary. We agree.

Deputy Deck testified as follows:

"Q: Thank you. Now, Deputy Deck, based on your overall observations relating to the green Jaguar and its driving movements, the slow driving, the multiple U-turns, the driving up and down multiple cul-de-sacs, and repeating driving patterns in residential neighborhoods, along with your observations of the front and rear passenger, as well as the driver, based on all of those observations that you made, and taking into account your training and experience, were you able to come to a conclusion as to what you thought was going on here?

"[Defense counsel]: Objection. Calls for speculation. Improper hypothetical. And improper expert opinion. And lacks foundation.

"The Court: Overruled.

"You can answer the question.

"The witness: Based on my observations, it is my belief that the suspects were casing and committing residential daytime burglaries."

Similarly, Detective Reyes testified:

6

"Q: Now, based on what was communicated to you through the helicopter's observations of the driving pattern and the movements of the defendants in and outside the vehicle, taking into consideration your training and experience specifically related to investigating residential burglaries, and taking into consideration the state of the Whitmer home that was later discovered and the state of the Perine window and screen, do you have an opinion as to whether or not these two defendants and Richardson were engaged in attempts to residentially burglarize and an actual residential burglary?

"A: Absolutely.

"Q: And what is that opinion?

"[Defense counsel]: Objection. Calls for improper legal conclusion. Lacks foundation. Calls for speculation.

"The Court: Overruled.

"The witness: Based on my observations, that they had committed the residential burglary and attempts."

There can be little doubt that these opinions were inadmissible, at least insofar as they opined that defendants committed residential burglary.

Evidence Code section 805 provides: "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." However, as our Supreme Court explained in *People v. Prince* (2007) 40 Cal.4th 1179, 1227, although Evidence Code section 805 permits an expert witness to opine on matters that *embrace* ultimate issues, it is still the rule that "an expert's opinion that a defendant is guilty is both unhelpful to the jury — which is equally equipped to reach that conclusion — and too helpful, in that the testimony may give the jury the impression that the issue has been decided and need not be the subject of deliberation." (*Prince*, at p. 1227.) Accordingly, "'A witness may not express an opinion on a defendant's guilt.'" (*People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

An expert may testify, as the officers did in part here, that the evidence is consistent with residential burglary. "[C]ourts have held an expert may testify concerning criminal modus operandi and may offer the opinion that evidence seized by the authorities is of a sort typically used in committing the type of crime charged. An experienced police officer may testify as an expert, for example, that tools discovered in a defendant's automobile are of the type commonly used in burglaries." (*People v. Prince, supra*, 40 Cal.4th at p. 1223.) The officers crossed the line, however, in testifying that the defendants actually committed residential burglary.

Nonetheless, we are not persuaded there is a reasonable probability the testimony affected the outcome of the trial. (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Partida* (2005) 37 Cal.4th 428, 439 ["Absent fundamental unfairness, state law error in admitting evidence is subject to the traditional *Watson* test"].)

As noted above, the officers could have testified defendants' conduct was consistent with residential burglary, and that is precisely how the prosecutor used the testimony in closing argument: "And [Detective Reyes] told us about his expertise with the driving patterns, the slowing, the stopping, the U-turns, the cul-de-sacs, the repeated driving patterns that we have in this case. They are all consistent with casing neighborhoods, with residential burglary. All consistent." At no point during argument did the prosecutor suggest the jury find guilt because the officers opined defendants were guilty.

Further, it must be obvious to most juries that when an officer testifies against a defendant, the officer is of the opinion the defendant is guilty. That is not news to the jury. The difference between opining defendants' conduct is "consistent with" a crime, which is proper, versus guilty of a crime, which is improper, is of legal significance, but usually little practical significance.

Additionally, the jury was instructed that it "alone must judge the credibility or believability of the witnesses" and that it should consider whether "the

8

witness's testimony [was] influenced by a factor such as bias . . ." Defense counsel argued the officers were biased, and thus the jury knew to take that into consideration. Further, the jury was instructed that they "must consider [expert] opinions, but you are not required to accept them as true or correct." Thus the jury was well aware that the officers' opinion was not conclusive and that the jury was the ultimate arbiter of guilt.

Finally, the evidence against defendants was strong. They were observed driving in a suspicious manner, then approaching the residences in question. There was evidence of unauthorized entry in two homes, and evidence of rifling through the owner's possessions at the Via de Linda residence. Defendants were hard pressed to explain these facts. Bell's counsel speculated that defendants may have seen the helicopter and they were simply trying to get away. Loftis's counsel speculated they may have been intent on trespass or vandalism, not theft. None of these theories are plausible in the overall context of the case. Given this state of the evidence, there is no reasonable probability that the officers' improper opinion testimony determined the outcome of the trial.

*The Trial Court Erred by Failing Sua Sponte to Instruct the Jury on the Elements of Theft, But the Error Was Harmless*

Loftis contends the trial court erred in failing sua sponte to instruct the jury on the elements of theft, which was the target crime for the burglary charges. We agree the court erred but again hold the error was harmless.

The Bench Notes to CALCRIM No. 1700, which was given here, state, "the court . . . has a **sua sponte** duty to define the elements of the underlying felony." Indeed, this is the law. As our high court explained in *People v. Hughes* (2002) 27 Cal.4th 287, 349, "'when a defendant is charged with burglary, the trial court, *on its own initiative*, must give instructions to the jury identifying and defining the target offense(s) that the defendant allegedly intended to commit upon entry into the building.'" "The duty to

9

define such so-called target offenses and instruct on their elements has become well established." (*Ibid.*)

Nonetheless, we hold the error was harmless beyond a reasonable doubt. (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Hughes*, *supra*, 27 Cal.4th at p. 352 [applying *Chapman* standard to failure to instruct on target offenses].)

There is little, if any, difference between the legal definition and common understanding of "theft." The trial court instructed the jury, pursuant to CALCRIM No. 1700, that to prove burglary, the prosecution was required to prove that "when [the defendant] entered a building he intended to commit theft." Instead of "theft," Penal Code section 459 uses the word "larceny." "The elements of theft by larceny are: (1) the defendant took possession of personal property owned by someone else; (2) the defendant did so without the owner's consent; (3) when the defendant took the property, he or she intended to deprive the owner of it permanently; and (4) the defendant moved the property, even a small distance, and kept it for any period of time, however brief." (*People v. Catley* (2007) 148 Cal.App.4th 500, 505.)

Webster's Third New International Dictionary (2002) page 2369 defines "theft" as "the act of stealing; *specif*: the felonious taking and removing of personal property with intent to deprive the rightful owner of it." This definition, which we believe tracks the common understanding of "theft," does not significantly differ from the legal definition of "theft." Thus, while as a purely legal matter the court was required to instruct on theft, the practical effect of failing to do so is minimal.

In this case, defendants' theories did not turn on any peculiarities of the legal definition of "theft" (to the extent there are any). Loftis notes that "the lack of evidence on the issue of intent to steal was a major part of appellant's defense." As we noted above, however, the theories bearing on defendants' intent in entering the residences were that they were fleeing from the police, were trespassing just for the sake of it, or were intending to commit vandalism. None of these theories depend on the

10

definition of "theft" at all, much less on some aspect of that definition not readily understood by the jurors. Accordingly, the error was harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.

_____
IKOLA, J.

WE CONCUR:

_____
MOORE, ACTING P. J.

_____
FYBEL, J.

11