IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ETHEL BOYD, as Personal Representative of EDITH CLARK, | ) ) ) | No. 30910-0-III (consolidated with No. 31267-4-III) |
| Respondent, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| MARY PANDREA, | ) ) | |
| Appellant. | ) ) | |

KORSMO, J. — This case involves a power of attorney entered into in California by Nevada residents who may have exercised that power in Hawaii before moving to Washington where litigation, brought by an Idaho plaintiff, ensued. We reverse and remand this matter for trial.

FACTS

Appellant Mary Pandrea and respondent Ethel Boyd are half-sisters through their mother, Edith Clark. The essential facts of this case revolve around Ms. Pandrea's care for Ms. Clark during her final years.

Widowed in 1975, Ms. Clark spent the subsequent years alternately living on her own or with her children. Ms. Pandrea resigned her secretarial job at Portland State University in 2000, to become a full time caregiver to her mother. The following year the

pair moved to Las Vegas, Nevada, to live with Ms. Pandrea's daughter. In November of 2001, Ms. Boyd suggested that Ms. Clark move into a nursing home in Escondido, California. Ms. Boyd, Ms. Clark, and Ms. Pandrea ventured to the facility.

The nursing home would not accept Ms. Clark unless she first exercised a power of attorney in favor of one of her daughters. Ms. Boyd declined to act as attorney in fact, so Ms. Pandrea took on the responsibility. The three women went to a California stationary store and purchased a power of attorney form. Ms. Clark signed the form in the presence of a notary in the store. She then was admitted to the nursing facility on November 2, 2001. Two days later, Ms. Pandrea removed Ms. Clark from the facility because the elder lady was miserable and overly medicated. They returned to Las Vegas.

Ms. Clark and Ms. Pandrea moved to Hawaii in January, 2002, to live in Ms. Pandrea's son's one bedroom cottage. While there, Ms. Clark received a $100,000 inheritance from her brother's estate. The check was forwarded to her by Ms. Boyd and deposited into Ms. Clark's checking account. As with previous accounts, Ms. Pandrea was a joint holder of the account.

Approximately $90,000 of the inheritance was used to purchase a three acre property with a house in Hawaii. The two women moved into that house, which was placed in Ms. Pandrea's name supposedly to repay her for the work of caring for Ms. Clark over the years. However, just seven months later they returned to Las Vegas to

2

again live with Ms. Pandrea's daughter and assist her in caring for Ms. Pandrea's granddaughter. They stayed until 2004, when the two women moved to Cheney, Washington, which they thereafter considered their permanent home. Other than a two month visit to the Hawaii house in 2008, Ms. Clark lived in Washington the rest of her life.

Guardianship proceedings regarding Ms. Clark eventually were filed in Spokane County. A guardian ad litem report in October, 2009, found Ms. Clark incapacitated and urged the appointment of a neutral guardian due to family dissension. Ms. Clark died intestate November 25, 2009 in Spokane County, survived by her seven children. Ms. Boyd was appointed administrator of the estate on December 29, 2009. Ms. Pandrea filed a request for special proceedings, RCW 11.28.240, seven weeks later.

Ms. Boyd, as representative of the estate, sued Ms. Pandrea, alleging breach of fiduciary duty concerning the power of attorney, conversion, and abuse of a vulnerable adult. The trial court, the honorable Gregory Sypolt, eventually granted summary judgment in Ms. Boyd's favor on the breach of fiduciary duties theory. He found that the language of the power of attorney, discussed later during the analysis of that issue, precluded self-dealing, so Ms. Pandrea could not accept the gift from her mother. Ms. Pandrea sought reconsideration and tried to raise new issues, including a claim that the statute of limitations had run; she also asked to be allowed to amend her pleadings. The

3

court denied both motions and entered judgment against Ms. Pandrea for $227,425, consisting of the $100,000 inheritance, prejudgment interest, and attorney fees. No findings were entered establishing the basis for the attorney fee award or concerning the reasonableness of the attorney fees. Ms. Pandrea then appealed to this court.

Ms. Pandrea also petitioned to remove Ms. Boyd as the personal representative of the estate for alleged failures to file appropriate reports and tax returns. She also sought an inventory and appraisal. Three of the siblings supported Ms. Pandrea, while the other two supported Ms. Boyd. The trial court ultimately denied the petition and granted Ms. Boyd nonintervention powers. Ms. Pandrea also appealed those rulings to this court. That appeal was consolidated with the original action.

## ANALYSIS

The initial appeal turns on the construction of the power of attorney. We discuss that matter before turning to the appeal involving the personal representative.

*Power of Attorney*

Judge Sypolt granted summary judgment based on his construction of the terms of the power of attorney. We review a summary judgment ruling de novo. *Schaaf v. Highfield,* 127 Wn.2d 17, 20-21, 896 P.2d 665 (1995). All facts and inferences are considered "in a light most favorable to the nonmoving party." *Inniss v. Tandy Corp.,* 141 Wn.2d 517, 522, 7 P.3d 807 (2000). Summary judgment is appropriate where there

4

is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Reid v. Pierce County*, 136 Wn.2d 195, 201, 961 P.2d 333 (1998).

The purpose of construing a document is to give effect to the intent of the parties. *Eurick v. Pemco Ins. Co.*, 108 Wn.2d 338, 340, 738 P.2d 251 (1987). A power of attorney is "strictly construed." *Bryant v. Bryant*, 125 Wn.2d 113, 118, 882 P.2d 169 (1994). The "instrument will be held to grant only those powers which are specified, and the agent may neither go beyond nor deviate from the express provisions." *Id.*

The power of attorney form is three pages; the first page begins with the appointment of Ms. Pandrea by Ms. Clark to act as her attorney in her place. A series of paragraphs follow that grant Ms. Pandrea authority to act concerning real and personal property, borrow money, and otherwise engage in financial transactions for Ms. Clark.[1] Paragraphs (g) and (h), dealing with a durable power of attorney, are stricken. Paragraph (i) advises that if (g) or (h) are not stricken, the following Notice to Persons Executing Durable Power of Attorney applies.

Following the notice concerning the durable power of attorney is the Notice to Person Accepting the Appointment as Attorney-in-Fact. It states that the person

---

[1] All three pages of the power of attorney form carry a footer stating in capital letters: "THIS FORM IS NOT VALID FOR HEALTH CARE DECISIONS."

accepting the appointment assumes "the fiduciary and other legal responsibility of an agent," including: "(1) the legal duty to act solely in the interest of the principal and to avoid conflicts of interest; (2) the legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you." Clerk's Papers (CP) at 18. The notice then continues with the following sentences:

> You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property unless this power of attorney specifically authorizes you to transfer property to yourself or accept a gift of the principal's property.

CP at 18.

The notice concludes with information that prosecution for fraud or embezzlement is possible, an elder abuse prosecution under Penal Code Section 368 is possible, and that a civil suit could also result. At the conclusion of the notice, on the top of the third page, is Ms. Pandrea's written acknowledgement that she had read the notice and understood the fiduciary duties she would assume. Finally, the document concludes with the principal signing, in the presence of a notary, the grant of authority that actually empowers the attorney in fact to act under the document.

The trial court concluded that the quoted language of the notice section was an operative part of the power of attorney and that Ms. Pandrea breached one of her duties under the document by accepting the gift. For two reasons, we disagree. First, the

6

drafting of the document places the powers granted Ms. Pandrea in their own section, which is primarily on the first page of the document. Two notice sections then follow, before the agent must acknowledge the notices. While the restrictions on the attorney's authority that are acknowledged in the notice section accurately state the law of California (and that of many other states), those restrictions are not found within the document's grant of powers to the attorney. Instead, the notice section only states the legal consequences of accepting the power.

The second reason is that the notice section is required by California law and acts only as a summary of that state's law. California Probate Code section 4128 requires that "a printed form of a durable power of attorney that is sold or otherwise distributed in this state for use by a person who does not have the advice of legal counsel shall contain, in not less than 10-point boldface type or a reasonable equivalent thereof, the following warning statements. . . ." That statement is followed by a verbatim recitation of the warning found in the power of attorney at issue here:

> By acting or agreeing to act as the agent (attorney-in fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:
>
> 1. The legal duty to act solely in the interest of the principal and to avoid conflicts of interest.
> 2. The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.

7

> You may not transfer the principal's property to yourself without full and adequate consideration or accept a gift of the principal's property. If you transfer the principal's property to yourself without specific authorization in the power of attorney, you may be prosecuted for fraud and/or embezzlement. If the principal is 65 years of age or older at the time that the property is transferred to you without authority, you may also be prosecuted for elder abuse under Penal Code Section 368. In addition to criminal prosecution, you may also be sued in civil court.

Cal. Prob. Code section 4128.

The warnings contained in the power of attorney are a restatement of California Probate Code section 4233 which requires: "[t]he attorney-in-fact shall keep the principal's property separate and distinct from other property in a manner adequate to identify the property clearly as belonging to the principal." Additionally, the warning in the power of attorney and the probate code refer to California's "Penal Code Section 368."[2] *See, e.g., People v. Catley,* 148 Cal. App. 4th 500, 55 Cal. Rptr. 3d 786 (2007) (prosecuting a caretaker for accepting a gift from an elderly man in caretaker's care because of the elder's lack of cognitive capacity).

In the present case the "notice" at issue here was language required to be inserted into California forms to give a warning to individuals about the current state of California law. Washington does not appear to have a similar provision

---

[2] Specifically, Section 368(e).

8

requiring an attorney-in-fact to keep property separate and distinct nor prevent an attorney-in-fact to accept a gift from the principal, when the principal herself is giving the gift to the agent.[3]

The "notice" language in the Power of Attorney in this case was language mandated by California probate law and pertained to California laws. The language was not an express provision and, thus, did not set the standard of fiduciary care in this case. It merely alerted the parties as to what legal duties existed under California law.

For both reasons, we conclude the trial court erred in finding that the legal notice of the consequences of accepting the appointment as attorney in fact served as a provision defining the agent's authority. We reverse the judgment[4] and

---

[3] Outside of the provisions of the power of attorney here, the acceptance of a gift and the commingling of funds are not per se a breach of the fiduciary duty. *See, e.g., In re Estate of Lennon,* 108 Wn. App. 167, 29 P.3d 1258 (2001) (requiring proof of an inter vivos gift where stepson was agent under power of attorney, and existence of commingling of funds not mentioned as breach of fiduciary duty).

[4] We note that no findings of fact and conclusions of law were entered in support of the attorney fee award. In the event fees are awarded in the future, the source of the attorney fees needs to be identified and the reasonableness of the fees established with sufficient detail to afford review. *E.g., Mahler v. Szucs,* 135 Wn.2d 398, 435, 957 P.2d 632 (1998).

remand for trial where numerous factual[5] questions remain to be sorted out, including any issues concerning Ms. Clark's capacity, whether Ms. Pandrea ever exercised the power of attorney, etc. Under the circumstances, we do not address Ms. Pandrea's challenges to the denial of her motion for reconsideration, nor do we address her motion to amend. In light of the issues remaining, it is likely both parties may be seeking to amend their pleadings before trial.

*Administration of the Estate*

Ms. Pandrea also argues that the trial court erred in denying her motion to remove Ms. Boyd from her post as administrator of their mother's estate. The trial court did not abuse its discretion.

If a personal representative "has not faithfully discharged said trust or is subject to removal for any reason specified in 11.28.250," RCW 11.68.070 allows the court to intervene and to remove or restrict the powers of a nonintervention personal representative, upon the petition of a creditor or other person with statutory authority. *In re Estate of Jones*, 152 Wn.2d 1, 9, 93 P.3d 147 (2004). RCW 11.28.250 provides:

---

[5] This appeal does not present a choice of law issue, though it appears the trial court now will be required to decide what law governs. On its face, the action of two Hawaii residents buying real estate in that state and jointly using a bank account there would appear to be governed by Hawaiian law. The parties are urged to follow CR 9(k)(1) upon remand with respect to the causes of action and any applicable defenses.

Whenever the court has reason to believe that any personal representative has wasted, embezzled, or mismanaged, or is about to waste, or embezzle the property of the estate committed to his charge, or has committed, or is about to commit a fraud upon the estate, or is incompetent to act, or is permanently removed from the state, or has wrongfully neglected the estate, or has neglected to perform any acts as such personal representative, or for any other cause or reason which to the court appears necessary, it shall have power and authority, after notice and hearing to revoke such letters.

The trial court must have valid grounds supported in the record in order to justify removal of the personal representative. *Jones*, 152 Wn.2d at 10 (citing *In re Estate of Beard*, 60 Wn.2d 127, 132, 372 P.2d 530 (1962); *In re Estate of Aaberg*, 25 Wn. App. 336, 339, 607 P.2d 1227 (1980)). The process for removing a personal representative is set forth in RCW 11.68.070, which provides:

If any personal representative who has been granted nonintervention powers fails to execute his trust faithfully or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, upon petition of any unpaid creditor of the estate who has filed a claim or any heir, devisee, legatee, or of any person on behalf of any incompetent heir, devisee, or legatee, such petition being supported by affidavit which makes a prima facie showing of cause for removal or restriction of powers, the court shall cite such personal representative to appear before it, and if, upon hearing of the petition it appears that said personal representative has not faithfully discharged said trust or is subject to removal for any reason specified in RCW 11.28.250 as now or hereafter amended, then, in the discretion of the court the powers of the personal representative may be restricted or the personal representative may be removed and a successor appointed.

11

The purpose of the statute "is to provide protection to beneficiaries and other interested parties when a personal representative breaches his fiduciary duties." *Jones*, 152 Wn.2d at 11. The statute grants the trial court "discretion to remove a personal representative who has nonintervention powers if the personal representative fails to execute his or her trust faithfully or is subject to removal for any reason specified in RCW 11.28.250." *In re Estate of Ardell*, 96 Wn. App. 708, 718, 980 P.2d 771 (1999) (citing *In re Estate of Beard*, 60 Wn.2d at 132). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

The essence of the trial court's ruling was that although Ms. Pandrea established errors or lapses by Ms. Boyd in the handling of the estate, there were no errors that prejudiced the estate or the beneficiaries. We believe that is a tenable ground for denying the motion to remove Ms. Boyd.

The trial court did not abuse its discretion in denying the motion to remove Ms. Boyd.

*Attorney Fees on Appeal*

Both parties seek attorney fees on appeal. We decline to grant fees to either party. This appeal was not frivolous and the estate has not significantly benefited from this action, so we decline to award fees to Ms. Boyd or the estate. Similarly, while Ms.

12

Pandrea has won the right to a trial, she has not prevailed substantively on the merits of the case nor has she prevailed on the action to remove the administrator. Accordingly, there is no basis for awarding attorney fees to her.

We reverse the summary judgment ruling and remand it for trial. The appeal from the action to remove Ms. Boyd is affirmed. We deny both parties their attorney fees and costs.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Lawrence-Berrey, J.