[No. F045249. Fifth Dist. Oct. 27, 2005.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY WAYNE McCOY, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1, 2, 4, 5, 7, 8, and 9.

## COUNSEL

Deanna F. Lamb, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, J. Robert Jibson and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## GOMES, J.—

### INTRODUCTION

A jury found Jerry Wayne McCoy, Jr., guilty of one count of exhibiting harmful matter to a minor and guilty of four counts of committing a lewd and lascivious act on a child under the age of 14 years. (Pen. Code, §§ 288, subd. (a), 288.2, subd. (a).) In all five counts, his six-year-old stepdaughter B. was the victim.

On appeal, McCoy raises nine issues. In the published portion of our opinion, we will reject, after agreeing partly with his and partly with the Attorney General's analyses of the law, his challenge to the constitutionality of CALJIC No. 2.20.1 and, in a question of first impression, his argument that a readback of testimony to the jury over express defense objection out of his and his attorney's presence violated his federal and state constitutional rights to counsel and due process. In the nonpublished portion of our opinion, we will agree with his argument that there is an insufficiency of the evidence

to support the count six lewd and lascivious conviction but will decide all of his other arguments adversely to him. We will reverse the judgment on count six and will order the sentence on that count stricken from the judgment but will otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, when B. was three, her mother J. started dating McCoy. In 1999, J. moved with B. into McCoy's bedroom in the three-bedroom house he shared with two other people. At first, B. slept in a bed in McCoy's and J.'s bedroom, but after McCoy built her a room adjoining his and J.'s bedroom she slept there. In September 2001, McCoy and J. got married. Testifying in his own defense, McCoy denied the charges against him.

From the testimony of B., a detective who interviewed her, and a pediatric nurse practitioner who examined her, "about five" discrete incidents of criminal conduct by McCoy against B. emerged. The following sentences summarize the facts in those incidents without regard to the dates of occurrence, which are irrelevant to the issues on appeal. McCoy called her into his and J.'s bedroom, where she saw him sitting naked on the floor watching a movie depicting a naked man and two naked women, one of whom wore a strap-on penis, having sex. She saw McCoy's penis was big and long and asked him, "What are you doing?"; he showed her he was touching his penis and told her to put her mouth there and to touch him there, and she sucked his penis and touched his penis with a cupped hand and a stroking motion. He masturbated as he lay in bed and she watched. He rubbed her vagina with his penis and had her touch her vagina and rub her vagina on his penis. Sometimes, but not always, something came out of his penis.

On those facts, a jury found McCoy guilty of five discrete incidents of criminal conduct against B. comprising one count of exhibiting harmful matter—an adult video—to a minor and four counts of committing lewd and lascivious acts—placing her mouth on his penis, touching her vagina with his penis, having her touch his penis, and having her watch him masturbate—on a child under the age of 14 years. The court imposed a six-year term for exhibiting the harmful matter and concurrent terms for committing the lewd and lascivious acts.

## DISCUSSION

1., 2.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 3. *CALJIC No. 2.20.1*

McCoy argues that by improperly bolstering B.'s credibility CALJIC No. 2.20.1 violated his federal and state constitutional rights to confrontation, due process, jury trial, and presentation of a defense. The Attorney General argues that by not objecting below McCoy forfeited his right to appellate review and that the instruction is constitutional.

Preliminarily, we turn to the Attorney General's forfeiture argument. Applying the established rule that allows appellate review, even in the absence of an objection, of any instruction affecting the substantial rights of the accused, we reject his argument. (Pen. Code, § 1259; *People v. Brown* (2003) 31 Cal.4th 518, 539, fn. 7 [3 Cal.Rptr.3d 145, 73 P.3d 1137].)

Fifteen years ago, the California Supreme Court characterized the Legislature's enactment of Penal Code section 1127f,[1] which mandates the instruction that CALJIC No. 2.20.1[2] now incorporates, as adopting the modern view of criminal jurisprudence that rejects traditional notions of child witnesses as

---

*See footnote, *ante*, page 974.

[1] Penal Code section 1127f provides: "In any criminal trial or proceeding in which a child 10 years of age or younger testifies as a witness, upon the request of a party, the court shall instruct the jury, as follows: [¶] In evaluating the testimony of a child you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. Although, because of age and level of cognitive development, a child may perform differently as a witness from an adult, that does not mean that a child is any more or less credible a witness than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child."

[2] CALJIC No. 2.20.1 provides: "In evaluating the testimony of a child [10 years of age or younger] you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. A child, because of age and level of cognitive development, may perform differently than an adult as a witness, but that does not mean that a child is any more or less believable than an adult. You should not discount or distrust the testimony of a child solely because he or she is a child. [¶] 'Cognitive' means the child's ability to perceive, to understand, to remember, and to communicate any matter about which the child has knowledge."

susceptible to leading questions, incapable of recalling prior events accurately, and neither reliable nor truthful. (*People v. Jones* (1990) 51 Cal.3d 294, 315 [270 Cal.Rptr. 611, 792 P.2d 643].) Three subsequent Court of Appeal cases have rejected constitutional challenges to CALJIC No. 2.20.1.

Two of those cases arise from the Fourth Appellate District, Division Two. In the first of those cases, *People v. Harlan* (1990) 222 Cal.App.3d 439 [271 Cal.Rptr. 653] (*Harlan*), the court held that the instruction neither excessively inflates a child's testimony nor impermissibly usurps the jury's role as arbiter of witness credibility nor violates the accused's right to confront a child witness nor "require[s] the jury to draw any particular inferences from a child's cognitive ability, age and performance as a witness. Rather, it instructs the jury to consider such factors in evaluating a child's testimony." (*Id.* at pp. 455–457.) In the second of those cases, *People v. Jones* (1992) 10 Cal.App.4th 1566 [14 Cal.Rptr.2d 9] (*Jones*), the court held that the instruction "presupposes that the jury must make a determination of credibility, but only after considering all the factors related to a child's testimony, including his [or her] demeanor, i.e., how he or she testifies on the stand," all without " 'foreclos[ing] independent jury consideration of the credibility of a child witness.' " (*Id.* at pp. 1572, 1574.) A case from the Sixth Appellate District held that CALJIC No. 2.20.1 neither " 'lessen[s] the government's burden of proof' " nor " 'instructs the jury to unduly inflate the testimony of a child witness' " (*People v. Gilbert* (1992) 5 Cal.App.4th 1372, 1393 [7 Cal.Rptr.2d 660] (*Gilbert*): "The instruction tells the jury not to make its credibility determinations solely on the basis of the child's 'age and level of cognitive development,' but at the same time invites the jury to take these and all other factors surrounding the child's testimony into account. The instruction provides sound and rational guidance to the jury in assessing the credibility of a class of witnesses as to whom ' "traditional assumptions" ' may previously have biased the factfinding process. Obviously a criminal defendant is entitled to fairness, but just as obviously he or she cannot complain of an instruction the necessary effect of which is to increase the likelihood of a fair result." (*Ibid.*)

McCoy argues that "*Harlan, Jones,* and *Gilbert* were wrongly decided." He emphasizes verbiage in *Harlan* that *Jones* quoted with approval about how the word "perform" in CALJIC No. 2.20.1 "implies nonverbal action" and about how the instruction "does not relate to the truth or falsity of the

content of the child's testimony." (*People v. Jones, supra,* 10 Cal.App.4th at pp. 1572–1573, citing *People v. Harlan, supra,* 222 Cal.App.3d at p. 455.)

First, McCoy paints with too broad a brush. *Gilbert* simply ignored the *Harlan/Jones* verbiage and cut to the chase: "Our own consideration of Penal Code section 1127f and CALJIC No. 2.20.1 satisfies us that *Harlan* reached *the right result.*" (*People v. Gilbert, supra,* 5 Cal.App.4th at p. 1393, italics added.)

Second, the *Harlan/Jones* verbiage cannot withstand thoughtful analysis. By stating that a child "may perform differently than an adult" "because of age and level of *cognitive* development" and defining " 'cognitive' " as "the child's ability to perceive, to understand, to remember, and to *communicate*," the instruction straightforwardly tells the jury that a child may perform differently than an adult "*because of*" the "*level of*" his or her "*ability to . . . communicate.*" (CALJIC No. 2.20.1, italics added.) The instruction expressly allows a reasonable likelihood that the jury did *not* construe the word "perform" to apply only to "nonverbal action." (See *Estelle v. McGuire* (1991) 502 U.S. 62, 72–73 & fn. 3 [116 L.Ed.2d 385, 112 S.Ct. 475], ["reasonable likelihood" standard of review]; *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705] [same].)

At oral argument, McCoy intimated that the infirmity he assigns to CALJIC No. 2.20.1 infects the new Judicial Council child witness instruction as well. (Judicial Council of Cal. Crim. Jury Instns. (2006), CALCRIM No. 330 [Testimony of Child 10 Years of Age or Younger].[3]) He is wrong. The *Harlan/Jones* verbiage originates entirely from case law, finds no support in CALJIC No. 2.20.1 or CALCRIM No. 330, fails to diminish the persuasiveness of the holdings in *Harlan* and *Jones,* and has no impact at all on the holding in *Gilbert.* In express reliance on the holdings in *Harlan, Jones,* and *Gilbert* alike, we squarely reject McCoy's constitutional challenges to CALJIC No. 2.20.1.

---

[3] CALCRIM No. 330 provides: "You have heard testimony from a child who is age 10 or younger. As with any other witness, you must decide whether the child gave truthful and accurate testimony. [¶] In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age and level of cognitive development. [¶] When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate. [¶] While a child and an adult witness may behave differently, that difference does not mean that one is any more or less believable than the other. You should not discount or distrust the testimony of a witness just because he or she is a child."

4., 5.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### 6. *The readback to the Jury*

McCoy argues that a readback of testimony to the jury over express defense objection out of his and his attorney's presence violated his federal and state constitutional rights to counsel and due process. The Attorney General argues that error, if any, was harmless.

During deliberations, the jury sent the court a note asking for a readback of B.'s testimony about watching videos with McCoy and about viewing photographs on the computer. The court granted the request, ordered the readback in the jury room, and admonished the jurors not to ask questions, not to discuss the case while the court reporters were in the jury room, and—if the jurors felt something was missing—to request an additional readback from the court reporters on the topics in the jury's note but otherwise to request an additional readback only from the court. McCoy objected and requested "that the reread be in open court so that we could see and hear what is being read to the jury and a record could be made of that" and so that he could "either object to or ask for additions or things like that." The court overruled the objection.

■ As the United States Constitution guarantees the accused the right "to have the Assistance of Counsel for his [or her] defence" (U.S. Const., 6th Amend.), so the California Constitution grants to the accused the rights "to have the assistance of counsel" and "to be personally present with counsel" and requires that those rights "shall be construed by the courts of this state in a manner consistent with the Constitution of the United States" (Cal. Const., art. I, §§ 15, 24). ■ Likewise, as the United States Constitution proclaims that no state shall "deprive any person of life, liberty, or property, without due process of law" (U.S. Const., 14th Amend.), so the California Constitution declares that no person may "be deprived of life, liberty, or property without due process of law" (Cal. Const., art. I, §§ 7, 15).

■ Construing the contours generally of the constitutional rights at issue here, the United States Supreme Court has articulated the accused's right to the presence of counsel "at every stage of a criminal proceeding where

*See footnote, *ante*, page 974.

substantial rights of a criminal accused may be affected" (*Mempa v. Rhay* (1967) 389 U.S. 128, 134 [19 L.Ed.2d 336, 88 S.Ct. 254]), the accused's right "to be present at all [critical] stages of the [criminal prosecution] where his [or her] absence might frustrate the fairness of the proceedings" (*Faretta v. California* (1975) 422 U.S. 806, 819, fn. 15 [45 L.Ed.2d 562, 95 S.Ct. 2525], citing *Snyder v. Massachusetts* (1934) 291 U.S. 97 [78 L.Ed. 674, 54 S.Ct. 330], overruled on other grounds by *Duncan v. Louisiana* (1968) 391 U.S. 145, 154–155 [20 L.Ed.2d 491, 88 S.Ct. 1444], and *Malloy v. Hogan* (1964) 378 U.S. 1, 2, fn. 1, & 11 [12 L.Ed.2d 653, 84 S.Ct. 1489]), and the accused's right " 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge' " (*Kentucky v. Stincer* (1987) 482 U.S. 730, 745 [96 L.Ed.2d 631, 107 S.Ct. 2658]). The high court has never held that a readback is a critical stage of trial. (See *La Crosse v. Kernan* (9th Cir. 2001) 244 F.3d 702, 707–708.)

■ In the absence of United States Supreme Court authority, McCoy relies on Ninth Circuit cases. (See, e.g., *Fisher v. Roe* (9th Cir. 2001) 263 F.3d 906, 913–917 (*Fisher*) [grant of relief after a readback in absence of and without knowledge of either accused or accused's attorney], abrogated on another ground by *Mancuso v. Olivarez* (9th Cir. 2002) 292 F.3d 939, 944, fn. 1; *Turner v. Marshall* (9th Cir. 1995) 63 F.3d 807, 814–815 [same], overruled on another ground by *Tolbert v. Page* (9th Cir. 1999) 182 F.3d 677, 685.) Even on federal questions, however, Ninth Circuit cases do not bind the state courts. (See *People v. Crittenden* (1994) 9 Cal.4th 83, 120, fn. 3 [36 Cal.Rptr.2d 474, 885 P.2d 887].)

Construing the contours of the constitutional rights at issue here specifically with reference to readbacks, the California Supreme Court has rebuffed several challenges akin to McCoy's. In *People v. Cox* (2003) 30 Cal.4th 916 [135 Cal.Rptr.2d 272, 70 P.3d 277], the court noted in passing that both the accused and his attorneys waived their presence at a readback but denied relief on the ground that "the rereading of testimony is not a critical stage of the proceedings." (*Id.* at p. 963.) The court distinguished *Fisher* on the ground that neither the accused nor his attorney even knew about the readback. (*Ibid.*) In *People v. Horton* (1995) 11 Cal.4th 1068 [47 Cal.Rptr.2d 516, 906 P.2d 478], with no showing that the accused's personal presence could have assisted the defense in any way, the court held that his attorney's stipulation to a readback without his or his attorney's presence was not ineffective assistance. (*Id.* at pp. 1120–1121, 1127; cf. *People v. Ayala* (2000) 23 Cal.4th 225, 287–289 [96 Cal.Rptr.2d 682, 1 P.3d 3].) "The reading back of testimony ordinarily is not an event that bears a substantial relation to the

defendant's opportunity to defend," the court observed. (*People v. Horton, supra,* 11 Cal.4th. at p. 1121.)

Similarly, the court held in *People v. Pride* (1992) 3 Cal.4th 195 [10 Cal.Rptr.2d 636, 833 P.2d 643] that despite the absence of a personal waiver by the accused his attorney's waiver of the presence of both attorney and client at a readback did not violate the accused's federal or state constitutional rights to counsel and due process even though, as the court acknowledged, "no one was present (the court, counsel, or defendant) to monitor or report the readback." (*Id.* at p. 251.) Congruently, the court held in *People v. Bloyd* (1987) 43 Cal.3d 333 [233 Cal.Rptr. 368, 729 P.2d 802] (*Bloyd*) that the accused's attorney's stipulation to the absence of attorney and client alike from a readback did not abridge the accused's federal constitutional right to counsel or state constitutional right to be present at trial even in the absence of his express consent. (*Id.* at pp. 358–361.)[5] Likewise, where the accused's attorney "purported to waive" the accused's presence, "various portions of testimony were reread to the jury," and the appellate briefing made no contention "that any other exchanges between the judge and jury, or counsel and jury, took place," the court in *People v. Hovey* (1988) 44 Cal.3d 543, 585 [244 Cal.Rptr. 121, 749 P.2d 776] declined to grant relief since "rereading of testimony ordinarily would not be an event which bears a substantial relation to the defendant's opportunity to defend, and nothing in the present record indicates that defendant's personal presence would have assisted the defense in any way."

■ Inferring a general rule from United States Supreme Court and California Supreme Court cases, we hold by parity of reasoning, on a record not only showing that the court carefully admonished the jury before the readback but also failing to show, let alone intimate, that McCoy's or his attorney's presence during the readback could have assisted the defense in any way, that the court committed no constitutional error in allowing the readback over express defense objection.[6]

---

[5] No issue arose in *Bloyd*, nor does McCoy raise one here, of noncompliance with the statute mandating a readback " 'in the presence of, *or* after notice to, the prosecuting attorney, and the defendant or his counsel, *or* after they have been called.' " (*People v. Bloyd, supra,* 43 Cal.3d at p. 361, fn. 13, quoting Pen. Code, § 1138, italics added; see *People v. Frye* (1998) 18 Cal.4th 894, 1007 [77 Cal.Rptr.2d 25, 959 P.2d 183] [violation of statutory mandate implicates accused's right to fair trial].) Likewise, McCoy raises no issue here of noncompliance with the statute requiring the accused's presence at all felony proceedings in the absence of a written waiver. (Pen. Code, § 977; see *People v. Bradford* (1997) 15 Cal.4th 1229, 1357 [65 Cal.Rptr.2d 145, 939 P.2d 259] [remedy for violation of statutory right only if violation of constitutional right].)

[6] Our holding that the court committed no error moots McCoy's argument about the incompatibility of federal and state standards for determining whether readback error is reversible.

7.–9.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed on the count six lewd and lascivious conviction. The sentence is ordered stricken from the judgment on that count. The matter is remanded with directions to the superior court to issue, and to send to every appropriate person a certified copy of, an abstract of judgment amended accordingly. McCoy has no right to be present at those proceedings. (See *People v. Price* (1991) 1 Cal.4th 324, 407–408 [3 Cal.Rptr.2d 106, 821 P.2d 610].) Otherwise the judgment is affirmed.

Vartabedian, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 8, 2006, S139417. Chin, J., did not participate therein.

---

*See footnote, *ante*, page 974.