Filed 9/29/14  P. v. Herrera CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL ANTHONY HERRERA,<br><br>          Defendant and Appellant. | A140458<br><br>(Alameda County<br>  Super. Ct. No. CH53143) |

Defendant Michael Anthony Herrera appeals the judgment imposed after a jury returned a guilty verdict on one count of forcible rape in violation of Penal Code section 261, subdivision (a)(2).  Defendant raises a single issue on appeal: the trial court denied his federal constitutional right to be present at all critical stages of the trial by allowing testimony to be read back to the jury without defendant or his counsel present.  We affirm the judgment for the reasons set forth below.

**FACTUAL AND PROCEDURAL BACKGROUND**

On the night of July 2, 2010, LH was living in a field on Dixon Street in Hayward, California.  She was homeless and had been camped with her boyfriend near a hollowed out tree for about six months.  On July 2nd, LH's boyfriend was in the hospital so she was sleeping alone.  After drinking alcohol, LH went to sleep around 9:30 p.m. and awoke to see defendant standing in front of the tree.  LH testified that she had never met defendant before and she was scared.  She said "who's there?' and defendant responded by placing his hand on his crotch and saying "something that you want."  Defendant got on top of LH, held her down and put one hand over her mouth.  Defendant then removed

1

LH's pants and forcibly had intercourse with her. After he ejaculated, defendant pulled up his pants and left in the direction of the BART station.

LH ran to the home of her friend and told her she had been raped and the friend called the police. Officer Robert Martinez was dispatched to the scene and conducted an investigation. Officer Martinez took a statement from LH and then took her to Highland Hospital.

Kristin Mancuso, a physician's assistant in the emergency room at Highland Hospital, examined LH on the night of the assault. Mancuso conducted a sexual assault exam and collected a DNA sample from her vaginal area. The sample was analyzed by Christine Lee, a criminalist at the Alameda County Sheriff's Crime Lab. She entered the DNA profile into the Combined DNA Index System (CODIS). Lily Zimmerman, acting supervising criminalist for Alameda County Sheriff's Crime Lab, compared the DNA sample to a sample from defendant. She found that on the sixteen points of DNA comparison, the samples were the same and that the odds of finding them the same were 1 in 383 sextillion in Caucasians and 1 in 2.021 septillion in Southwest Hispanics.

The jury began deliberations on the afternoon of September 23, 2013. On the second day of deliberations, the jury requested a readback of the testimony of three witnesses: LH, Officer Martinez, and Ms. Mancuso. The jury requested the readback of the "whole" transcript for both LH and Officer Martinez and the whole transcript, "minus qualification as [an] expert" for Ms. Mancuso.

After the lunch recess, before the jury was brought into the courtroom, the court explained to counsel that it had reviewed *People v. McCoy* (2005) 133 Cal.App.4th 974 and stated that "based on the *McCoy* case, I don't believe there is any violation of the defendant's rights in not having the defendant or his attorney present during read back." The court then asked defense counsel if he would like to make a record on the issue. Defense counsel stated that he believed the readback would be conducted in the courtroom where he and his client would be present. He stated he would like the opportunity to review the *McCoy* case, and then stated "I would also object to not being

permitted to be present during the read back and to my client not being permitted to be present during the read back." The court stated:

> "Basically, the *McCoy* case says based on all kinds of precedent that was cited there that read back is not a critical stage of the trial; therefore it doesn't impact the defendant's due process rights. . . . I'm overruling your objection. I'm going to order the read back to occur with solely the court reporter and the jury in the jury room."

The court then ordered the readback of the testimony to take place in the jury room. The court instructed: "The jury is not to ask any questions about the case nor discuss the case during read-back. If the jury wants additional read-back of testimony, they are to do so by a separate request of the Court."

The readback of the testimony occurred during the afternoon of September 24th and the morning of September 25th for a total of three hours and 45 minutes. On the morning of September 26, 2013, the jury returned a guilty verdict.

## DISCUSSION

Defendant contends that his federal constitutional right to be present during all critical phases of the trial was violated when the court allowed the readback of testimony to the jury without defendant or his counsel present. We conclude that the readback did not violate defendant's constitutional rights and defendant cannot demonstrate prejudice.

Under the confrontation clause of the Sixth Amendment and the due process clause of the Fourteenth Amendment, "a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." (*Kentucky v. Stincer* (1987) 482 U.S. 730, 745 citing *Snyder v. Massachusetts* (1934) 291 U.S. 97, 105-108 overruled on other grounds by *Malloy v. Hogan* (1964) 378 U.S. 1.) A "defendant is not entitled to be personally present during proceedings which bear no reasonable, substantial relation to his or her opportunity to defend the charges against him, and the burden is on defendant to demonstrate that his absence prejudiced his case or denied him a fair and impartial

3

trial." (*People v. Horton* (1995) 11 Cal.4th 1068, 1120-1121, as modified on denial of rehearing (Jan. 24, 1996) citing *People v. Hovey* (1988) 44 Cal.3d 543, 585.)

The United States Supreme Court has not addressed whether the readback of testimony is a critical stage of the trial. The California Supreme Court, however, has repeatedly reaffirmed that readback is not considered a critical stage. (*People v. Lucas* (2014) 60 Cal.4th 153, 299.) "[T]he rereading of testimony is not considered a critical stage of trial in which the defendant has a constitutional right to personal presence." (*Ibid*; *People v. Horton, supra,* 11 Cal.4th at p. 1121 ["The reading back of testimony is not an event that bears a substantial relation to the defendant's opportunity to defend"].)

"Absent a showing of prejudice, a defendant's 'absence from a rereading of testimony does not raise due process concerns.'" (*Lucas, supra,* 60 Cal.4th at p. 300, citing *People v. Fauber* (1992) 2 Cal.4th 792, 837.) A defendant must explain how his presence would have assisted his defense at the readback or altered the outcome of the trial. (*Lucas, supra,* 60 Cal.4th at p. 300.) In *Lucas*, the court found that a defendant's assertion that the court reporter may have omitted part of the testimony, made a mistake in the reading, or provided an inappropriate emphasis of voice was speculative and did not establish prejudice. (*Ibid*.) Similarly, in *People v. Horton*, the court found that the defendant's presence would not have altered the replication of the witnesses intonations on readback or assisted his defense in any way. (*People v. Horton*, *supra*, 11 Cal.4th 1068 at p. 1121.)

Defendant makes similar arguments here that the record does not reflect whether the court reporter read the entire testimony of the three witnesses, whether the reading was accurate, or whether the reporter used any improper voice inflection. For the reasons set forth in *Lucas* and *Horton*, defendant's arguments are speculative and his presence would not have altered the procedure. In addition, there is no showing here that the reporter failed to follow the court's instructions and we presume that an official duty has been regularly performed. (Evidence Code section 664; *People v. Wader* (1993) 5 Cal.4th 610, 661 [presumption applied to court reporters].)

4

Defendant's constitutional rights were not violated by his absence or the absence of his counsel from the readback of testimony. Defense counsel was informed of the readback request and the court allowed him to object and make a record. The court controlled the content and circumstances of the readback by instructing the court reporter to read the full testimony of the three witnesses as the jury requested. The court instructed the jury that they were not to ask any questions or discuss the case during readback and if they wanted to hear additional testimony, they must make a separate request to the court. In *People v. Pride*, the court held that where the court reporter was instructed not to comment or answer questions during the readback, "we will not presume that testimony was misread or that misconduct occurred." (*People v. Pride* (1992) 3 Cal.4th 195, 251; see also *People v. McCoy, supra,* 133 Cal.App.4th at p. 983 [holding where the judge has carefully admonished the jury before readback and where the defendant cannot show that his presence or his counsel's presence could have assisted the defense in any way, the court committed no constitutional error in allowing the readback over defense objection].)

In the absence of United States Supreme Court authority, defendant relies on a Ninth Circuit decision, *Fisher v. Roe*, to support his argument. (*Fisher v. Roe* (9th Cir. 2001) 263 F.3d 906, overruled on another ground by *Payton v. Woodford* (9th Cir. 2003) 346 F.3d 1204, 1217-1218.) Ninth Circuit authority, even on federal questions, is not binding on state courts. (*People v. McCoy, supra,* 133 Cal.App.4th at p. 982.) Additionally, *Fisher* is distinguishable from this case. In *Fisher v. Roe*, all parties were unaware of the readback and were given no opportunity to object or ensure that the full testimony of the witnesses was read back to the jury. The court reporter read only parts of the testimony based upon the reaction of the jurors and the trial court did not control the readback. (*Fisher v. Roe, supra,* 263 F.3d at p. 915.) The *Fisher* court noted that the jury did not simply ask for the readback of a witnesses' testimony, but requested specific portions of testimony in order to review the defense to the charges. (*Ibid.*) Under the unique facts of the case, the lawyers input on how to handle the readback "may have been

vital." (*Ibid.*) The *Fisher* court therefore held that the defendant's due process rights had been violated.

Here, as outlined above, defendant and counsel's presence was not "vital" and would not have altered the readback procedure which involved the full testimony of the three witnesses where there was no input needed about which portions of testimony to include. Further, the court carefully instructed the jury that they were not to ask questions or deliberate during the readback. Defendant was not deprived of his right to be present for a critical phase of the trial and neither his presence nor his counsel's presence would have impacted the fairness of the procedure.

## DISPOSITION

The judgment is affirmed.

_____

Jenkins, J.

We concur:

_____

McGuiness, P. J.

_____

Pollak, J.