Filed 10/17/25  P. v. Salazar CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D084565 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF005203) |
| ANEKA JAZMIN SALAZAR, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Imperial County, Christopher J. Plourd, Judge.  Affirmed.

Richard Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Melissa Mandel and James Spradley, Deputy Attorneys General, for Plaintiff and Respondent.

# I

# INTRODUCTION

A jury found Aneka Jazmin Salazar guilty of felony child abuse (Pen. Code, § 273a, subd. (a))[1] for abusing or permitting the abuse of her six-week-old son, R.S.  The jury found Salazar did not personally inflict great bodily injury on a child under five years old (§ 12022.7, subd. (d)), but returned true findings on three aggravating circumstance allegations—(1) the crime involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)); (2) the victim was particularly vulnerable (*id.*, rule 4.421(a)(3)); and (3) Salazar took advantage of a position of trust or confidence to commit the offense (*id.*, rule 4.421(a)(11)).  The trial court sentenced Salazar to state prison for the upper term of six years.

On appeal from the judgment of conviction, Salazar argues the trial court abused its discretion by imposing the upper-term punishment. Specifically, she claims the court could not have relied on the vulnerable-victim or position-of-trust aggravating circumstances without violating the prohibition against dual use of facts.  She also contends the jury's not-true finding on the great-bodily-injury enhancement precluded the court from relying on the great-violence aggravating circumstance.  Finally, she argues her trial counsel was ineffective insofar as he failed to object to the imposition of the upper term on these grounds.  We reject these arguments and affirm the judgment.

---

[1]     Further undesignated statutory references are to the Penal Code.

## II

## BACKGROUND

A. *Factual Background*

Salazar and her husband are the parents of an older daughter, A.S., and a younger son, R.S. R.S. was born prematurely after 34 weeks of pregnancy. However, R.S. gained weight, appeared healthy, and exhibited no abnormalities during his first few weeks of life.

When R.S. was six weeks old, his pediatrician noticed his complexion was pale and he had bruises on his cheek, buttocks, fingers, thigh, and knee. The bruises were different colors, which suggested they may have occurred at different times. The pediatrician suspected the injuries were non-accidental and called 911 out of concern for the infant's safety.

R.S. was transported by ambulance to an El Centro emergency room and then flown to Rady Children's Hospital in San Diego for treatment. Imaging studies performed at Rady revealed R.S. was suffering from a skull fracture and fresh bleeding inside and around the brain resulting in permanent brain damage. Further, the imaging studies showed R.S. had sustained at least six rib fractures, and possibly more. The injuries did not occur during R.S.'s birth and they were consistent with a high-energy trauma and the application of force to the brain. Rady medical staff also observed bruises on R.S.'s leg, hip, buttocks, and hands, as well as a swollen pinkie finger. Several of the bruises were consistent with human adult bite marks.

A social worker interviewed Salazar when R.S. was admitted to the emergency room. Salazar did not offer a viable explanation for how R.S. sustained his injuries. She theorized her 22-month-old daughter, A.S., may have caused the injuries, but stated she never left the children together unsupervised. She also told the social worker that R.S.'s father assisted with

caring for the infant, but she was his primary caretaker, she changed his diapers, and she bathed him. According to Salazar, she brought R.S. to his pediatrician because he had been vomiting and breathing abnormally, not because of his bruises. Salazar said she had not noticed the severity of R.S.'s bruises because the family lived in a trailer with poor lighting.

A second social worker interviewed Salazar a few weeks later in connection with a juvenile dependency proceeding. Salazar gave multiple explanations for how R.S. may have sustained his injuries, but the social worker did not believe the explanations were reasonable. For example, Salazar told the social worker R.S. may have sustained the injuries when she drove her car over a street median while R.S. was seated in a car seat in the backseat. Salazar also said they had visited family in Mexicali and some of her family members had held R.S. during the visit, but she never left the infant unsupervised. When the social worker asked Salazar whether A.S. was capable of inflicting the injuries, Salazar said A.S. sometimes played rough with her brother, but she did not believe A.S. had caused the injuries. Salazar said R.S.'s father was present at the family home when he was not working and sometimes assisted with childcare, but she never left R.S. alone under anyone else's care.

While R.S. was at the emergency room, Salazar waived her rights under *Miranda v. Arizona* (1966) 384 U.S. 436, and spoke with a sheriff's sergeant from the Imperial County Sheriff's Office. Salazar told the sergeant she served as R.S.'s primary caregiver and she alone changed his diapers, fed him, and slept with him. She said R.S.'s father had minimal involvement in looking after the infant, but the father was very loving, cared for his children, and did not cause R.S.'s injuries. She said her mother visited the family occasionally, but her mother did not cause the injuries either. Salazar also

4

said A.S. did not cause her brother's head injuries and Salazar intervened whenever A.S. acted aggressively with her brother. Salazar provided no explanation as to how R.S. sustained his injuries.

At trial, a child abuse expert testified that R.S. did not cause the injuries himself and he did not sustain the injuries at birth. The expert opined that someone bit R.S. and an adult likely assaulted R.S. by wrapping his or her fingers around the infant's chest, lifting him up, and forcefully slamming his head onto a hard surface. According to the expert, the squeezing of R.S.'s ribs likely caused the rib fractures and the high energy impact of R.S.'s head on the hard surface likely caused the skull fracture. Based on the acute stage of R.S.'s brain bleeding, the expert believed R.S. sustained his injuries a day or two before he was taken to the emergency room.

B. *Procedural Background*

Salazar was charged by amended information with one count of felony child abuse in violation of section 273a, subdivision (a). The amended information included a sentencing enhancement allegation that Salazar personally inflicted great bodily injury on R.S., a person under the age of five years. It also alleged three aggravating circumstances—the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; the victim was particularly vulnerable; and the defendant took advantage of a position of trust or confidence to commit the offense.

The case proceeded to trial and a jury found Salazar guilty of the felony child abuse charge. The jury returned a not-true finding on the allegation of personal infliction of great bodily injury, but found true all three aggravating

circumstance allegations.[2] Thereafter, the trial court sentenced Salazar to prison for the upper term of six years.

## III

## DISCUSSION

A. *The Trial Court Did Not Err by Imposing the Upper Term*

On appeal from the judgment of conviction, Salazar argues the trial court erred by sentencing her to the upper term because the court could not permissibly rely on any of the aggravating circumstances found true by the jury. She claims the court violated the prohibition against dual use of facts insofar as it relied on the aggravating circumstances relating to victim vulnerability and her abuse of a position of trust. Further, she asserts the court erred to the extent it relied on the aggravating circumstance relating to the violent nature of the crime because she did not personally harm R.S., as evidenced by the jury's finding that she did not personally inflict great bodily harm on R.S. We reject these arguments.

As an initial matter, Salazar forfeited her arguments by failing to present them to the trial court. To encourage the prompt detection and correction of sentencing errors, and reduce the number of unnecessary appellate claims of error, reviewing courts require parties to raise certain issues at the time of sentencing, including claims that "the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons." (*People v. Scott* (1994) 9 Cal.4th 331, 351, 353 (*Scott*).) "In

---

[2] For each aggravating circumstance allegation, the jury was instructed it could return a true finding on the allegation only if the jury members unanimously agreed "that the People [had] proved that the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime."

6

such cases, lack of a timely and meaningful objection forfeits or waives the claim." (*Id.* at p. 351.) Here, Salazar asked the trial court to grant probation or impose the low term, rather than the upper term. However, she did not object to the court's reliance on the proven aggravating circumstances or present her dual-use argument to the court. Thus, Salazar has forfeited her appellate claims of error. (See *id.* at p. 355 [defendant forfeited claim that sentencing factors were "inapplicable, duplicative, and improperly weighed" by not objecting]; *People v. de Soto* (1997) 54 Cal.App.4th 1, 7–9 [defendant forfeited claim relating to dual use of facts by failing to interpose dual-use objection]; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 90 [same].)

Salazar's claims also fail on the merits. "The Determinate Sentencing Act has been in effect since 1977 and prescribes the punishment to be imposed in most noncapital felony cases." (*Scott, supra*, 9 Cal.4th at p. 349.) "Where imprisonment is imposed, the court typically selects a lower, middle, or upper term as the base term for the underlying offense." (*Ibid.*) Under the Determinate Sentencing Act, the "court often has broad discretion to tailor the sentence to the particular case," including discretion to select the base term. (*Ibid.*) "[T]he middle term is generally the presumptive term, and a court may impose an upper term only if it is justified by aggravating circumstances that have been stipulated to by the defendant, found true beyond a reasonable doubt at trial, or established by certified records of a prior conviction." (*People v. Codinha* (2023) 92 Cal.App.5th 976, 995.) "Only a single aggravating factor is required to impose the upper term." (*People v. Osband* (1996) 13 Cal.4th 622, 728.) We review a court's sentencing decision for abuse of discretion, which occurs if the court " 'relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.' " (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1063.)

7

As noted, Salazar argues the trial court erred insofar as it imposed the upper term based on R.S.'s vulnerability and/or Salazar's abuse of a position of trust or confidence. She argues these factors are elements of the crime for which she was convicted and the trial court could not have relied on them a second time to aggravate her punishment without violating the prohibition against dual use of facts. We disagree.

"[T]he prohibition against dual use of facts in sentencing is a limited one: 'Although a single [sentencing] factor may be relevant to more than one sentencing choice, such dual or overlapping use is prohibited to some extent.'" (*People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197, italics omitted.) Relevant here, a court cannot use a single fact "constituting an element of the offense" to aggravate the base term. (*Scott, supra*, 9 Cal.4th at p. 350; see Cal. Rules of Court, rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."].) The phrase "element of the offense" refers to "an essential component of the legal definition of the crime considered in the abstract." (*People v. Zamora* (1991) 230 Cal.App.3d 1627, 1636.) Thus, "where the facts surrounding the charged offense exceed the minimum necessary to establish the elements of the crime, the trial court can use such evidence to aggravate the sentence." (*People v. Castorena* (1996) 51 Cal.App.4th 558, 562.) In other words, a court may use "facts to aggravate a sentence when those facts establish elements not required for the underlying crime." (*Ibid.*, italics omitted.)

Section 273a, subdivision (a), the felony child abuse statute, provides, "Any person who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the

8

care or custody of any child, willfully causes or permits the person or health of that child to be injured, or willfully causes or permits that child to be placed in a situation where his or her person or health is endangered, shall be punished by imprisonment in a county jail not exceeding one year, or in the state prison for two, four, or six years." The child abuse statute is " ' "intended to protect a child from an abusive situation in which the probability of serious injury is great." ' " (*People v. Valdez* (2002) 27 Cal.4th 778, 784.) It defines child abuse to include conduct that " 'can occur in a wide variety of situations: the definition broadly includes both active and passive conduct, i.e., child abuse by direct assault and child endangering by extreme neglect.' " (*People v. Odom* (1991) 226 Cal.App.3d 1028, 1032.)

Neither of the aggravating circumstances at issue here constituted an element of this offense. To sustain a felony child abuse conviction, the prosecution must prove the victim is a child under the age of 18 years. (§ 273a, subd. (a)); see *People v. Thomas* (1976) 65 Cal.App.3d 854, 857.) "[F]or purposes of finding the aggravating factor of particular vulnerability, ' "[p]articularly ... means in a special or unusual degree, to an extent greater than in other cases. Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act." ' " (*People v. DeHoyos* (2013) 57 Cal.4th 79, 154.) "Thus, a crime victim can be deemed particularly vulnerable as an aggravating factor 'for reasons not based solely on age,' " including the victim's physical or mental condition, intoxication of the victim, the victim's extreme youth within a given age range, the victim's relationship with the defendant, or the defendant's abuse of a position of trust. (*Ibid.*; see *People v. Garcia* (1985) 166 Cal.App.3d 1056, 1069–1070.) Here, the facts surrounding the offense demonstrate R.S. was particularly vulnerable for reasons beyond the mere

9

fact he was under the age of 18 years old. He was a defenseless infant who endured abuse six weeks after his premature birth, he could not walk, talk, or move on his own, and his own biological mother and sole caregiver perpetrated or allowed the abuse against him. Because these facts exceeded the minimum necessary to prove that R.S. was under the age of 18 years old, the trial court did not violate the prohibition against dual use of facts insofar as it relied on R.S.'s particular vulnerability to impose the upper term.

The trial court also did not err insofar as it relied on Salazar's abuse of a position of trust or confidence. The felony child abuse statute requires the prosecution to prove the defendant "ha[s] the care or custody of [the] child." (§ 273a, subd. (a).) However, the facts surrounding the offense at issue here exceeded the minimum necessary to prove this element of the crime. Salazar was not merely R.S.'s caretaker or custodian, but also his biological mother— a fact the prosecutor highlighted when she discussed the position-of-trust aggravating circumstance during closing arguments. "[P]arenthood is the quintessential position of trust and confidence." (*People v. Tompkins* (2010) 185 Cal.App.4th 1253, 1267; see *People v. Jones* (1992) 10 Cal.App.4th 1566, 1577 ["the fact that defendant was the children's biological father … clearly supports the finding that defendant used a position of trust and confidence, that of a legal parent, to commit the offense"].) Because the facts surrounding the offense exceeded those needed to establish the crime, the trial court could permissibly rely on Salazar's abuse of a position of trust or confidence to aggravate the base term.

Finally, Salazar has not established that the court erred by basing its sentencing decision on the fact the crime involved great violence, great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness. Even though the jury found Salazar did not personally inflict

10

great bodily injury on R.S., the jury's guilty verdict on the felony child abuse charge demonstrates, at minimum, that she allowed a third party to perpetrate horrific acts of violence against R.S. According to the child abuse expert, those appalling acts of brutality included biting the infant's skin, squeezing his chest hard enough to fracture six or more ribs, and forcefully slamming his head onto a hard surface. R.S.'s injuries were significant and life-altering, as he now suffers from permanent brain damage. Irrespective of whether Salazar personally perpetrated these ruthless acts of violence against her child or allowed another person to do so, the jury reasonably found Salazar acted with a high degree of cruelty, viciousness, or callousness, and the trial court did not err insofar as it relied on this aggravating factor.

For all of these reasons, we conclude the trial court properly relied on the proven aggravating circumstances and did not exceed the bounds of its sentencing discretion when it sentenced Salazar to the upper term.

B. *Salazar Has Not Established That Her Trial Counsel Was Ineffective*

Salazar also claims the judgment should be reversed because her trial counsel was ineffective. Specifically, she argues her counsel's performance was deficient because her counsel did not object to the trial court's reliance on the proven aggravating circumstances to aggravate the base term.

To establish ineffective assistance of counsel, a defendant must "demonstrate (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient representation prejudiced the defendant, i.e., there is a 'reasonable probability' that, but for counsel's failings, defendant would have obtained a more favorable result." (*People v. Dennis* (1998) 17 Cal.4th 468, 540–541; see *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

11

Salazar's ineffective assistance of counsel argument fails at the first step of this two-step analysis. "Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile." (*People v. Price* (1991) 1 Cal.4th 324, 387.) Here, Salazar's counsel reasonably could have concluded that it would be futile to object to the court's reliance on the proven aggravating circumstances because, as discussed, it was proper for the court to rely on these factors. Further, her counsel submitted a thorough statement of mitigation and urged the court to grant her probation or impose the lower term, rather than the middle or upper term. Because it was reasonable for Salazar's counsel to refrain from imposing meritless objections, and her counsel affirmatively requested that the court impose probation or the lower term, we conclude Salazar has failed to demonstrate that her counsel's performance was deficient.

## IV

## DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

DATO, J.

RUBIN, J.